(88 South. 357)

## HAYS COOPERAGE CO. v. LOUISVILLE & N. R. CO. (7 Div. 667.)

(Court of Appeals of Alabama. Nov. 9, 1920.)

**1. Limitation of actions ⬡═29(2)—"Open account" defined.**

An open account is one in which some term of the contract is not settled by the parties whether the account consist of one item or many, but the term "some term of the contract is not settled by the parties" presupposes some term of the contract that the parties are capable of dealing with or of leaving open or unsettled.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Open Account.]

**2. Limitation of actions ⬡═29(2)—Claim for under freight charges held not an open account.**

Where 19 cars of wood blocks were shipped during three years and shipper paid freight based on the mutually mistaken idea that the distance was 70 miles, when in fact it was 76 miles, a claim by the railroad for under freight charges was not a claim on an open account which would be barred by the three-year statute of limitations; the rate in a case of shipment of freight being fixed by law, and not being a matter of contract.

Appeal from Circuit Court, Etowah County; O. A. Steele, Judge.

Action by the Louisville & Nashville Railroad Company against the Hays Cooperage Company, to recover under charges for freight. Judgment for the plaintiff, and the defendant appeals. Affirmed.

The following is the agreed statement of facts:

In the above-entitled cause it is agreed by and between the plaintiff and the defendant that said cause may be submitted for trial on the hereinafter agreed statement of facts, to wit: It is agreed: That on the dates hereinafter mentioned the plaintiff received from various consignors the shipments hereinafter set out, consisting of soft wood blocks or stave bolts. That the weights mentioned therein are correct. That the defendant as consignee paid

---

⬡═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the amount set forth on each shipment, and that amount so paid by the defendant and received by the plaintiff was at the rate of 70 cents per cord of 3,500 pounds, according to a rate published and established by plaintiff, with the consent of the Railroad Commission of Alabama. That all of said shipments originated at Trussville, Ala., being as follows: 19 cars—total weight, 1,241.900; total freight charged and collected, $244.11.

That Trussville, Ala., the point where the shipments originated, is located on and reached both by the plaintiff company and the Alabama Great Southern Railroad, and that both railroads at the time had a rate on wooden blocks such as were covered by these shipments, as shown by the copy of the rate sheet hereto attached and made a part of this agreed statement of facts and marked "Exhibit A." That a cord of heading timber or wooden blocks, of 128 cubic feet, would weigh on an average over 6.000 pounds to the cord, and that a cord of heading timber or wooden blocks measuring 128 feet was worth at the time of the shipments herein mentioned f. o. b. Attalla $3.70 per cord of 128 cubic feet. That the plaintiff company did not have any agent at Trussville. during the period these shipments moved, and all shipments were moved by the conductors in charge of the trains, and this without bills of lading, showing routing. All these shipments were carried from Trussville to Boyles away from Attalla, their destination, a distance of 16 miles, and then were carried around over the plaintiff's line by way of Village Springs and Oneonta to Attalla. That this was the shortest line the plaintiff company had from Trussville to Attalla, the distance from Boyles to Attalla being 60 miles, making the whole distance from Trussville to Attalla over plaintiff's lines 76 miles. That Trussville over the line of the Alabama Great Southern Railroad is 41 miles from Attalla, and Birmingham is 14.3 miles from Trussville over the Alabama Great Southern Railroad. The Alabama Great Southern Railroad Company, having the same rate in force at the time of these shipments as the plaintiff company did, on account of the distance from Trussville to Attalla being only 41 miles, carried shipments of similar blocks at the rate of 60 cents per cord of 3,500 pounds. That the plaintiff company had no agent at Trussville during the time said shipments moved, and neither the shippers nor the defendant knew or were informed that these shipments, in being carried by the plaintiff company from Trussville to Boyles and then by the way of Village Springs and Oneonta to Attalla, their destination, were being carried over 70 miles, and the plaintiff company charged and collected the freight charges on the assumption that it was not over 70 miles. That all of said shipments were made, delivered, and the freight charges made and collected more than three years before the bringing of this suit.

That the plaintiff had also in effect a rate of 8 cents per hundred pounds on lumber, logs, heading in carload lots of not less than 30,000 pounds, and on lapped lumber and logs 24,000 for each car used, unless actual weight is greater, and tanbark shingles and laths in carloads of not less than 24,000, as shown by copy from schedule of rates on file with and approved by Alabama State Railroad Commission, and hereto attached and made a part of this agreed statement of facts. It is marked "Exhibit B."

That the plaintiff had in effect another rate, effective August 20, 1913, which classifies as "N" the following: Lumber dressed N. O. S. and rough lumber, including fence, posts, and rails, heading hoops, hoop poles, hub and other rough blocks, laths, logs, shingle bolts staves, staves bolts, telegraph and telephone posts, timber, wood, etc., not over 28 feet long C. L. minimum weight 30,000 pounds tanbark, shingles minimum weight 24,000, which fixes the rate from Gate City branch Trussville to Attalla 15 cents per cwt. A copy from said schedule of rates on file with and approved by the Alabama Railroad Commission is hereto attached and marked "Exhibit C" and made a part of this agreed statement of facts.

That plaintiff had also a rate effective September 4, 1914, on box and barrel material C. L. per car of 24,000 pounds of less than 77 miles and over 72 miles, $12, and effective January 30, 1915, of $13.20. A copy from said schedule of rates on file with and approved by the Alabama Railroad Commission is hereto attached and marked "Exhibit D," and made a part of this agreement of facts.

That during the period from November 23, 1914, to December 14, 1914, there was in effect rate basis by plaintiff for. making rates on lumber, laths, shingles, heading carload, minimum weight 30,000 pounds, a distance of 76 miles. The rate was 9 cents, and which rate the Commission will offer no objection to the Louisville & Nashville Railroad protecting on the 14 cars which moved during said period, as shown by letter of August 6, 1919, to P. E. Culli of Gadsden.

That each and every shipment above set out and on which this suit is based arose at Trussville, Ala., and was delivered to the defendant at Attalla, Ala., and were wholly intrastate shipments. That both points, Trussville and Attalla, are on the line of the plaintiff's railroad and also on the line of the Alabama Great Southern Railroad, and are both competitive points. That all of said shipments moved on what is called "Blue Bills," that is, conductor's waybills. That one of said blue bills is hereto attached and marked "Exhibit E," and made a part of this agreed statement of facts. That all of the other blue bills were of like tenor, except that the cars were different cars and the weight was different.

That the statement hereto attached, and marked "Exhibit F" and made a part of this agreed statement of facts, shows each of said shipments, car number, date, weight, amount charged and paid, and also the amount now claimed by the plaintiff company under the tariffs noted at the bottom. Dated this November, 1919.

The exhibits contained a lot of extracts from the tariffs, basis for rates on softwood blocks, staves, and headings, per cord of 3,500 pounds, excess to be charged in proportion over 50 miles and under 70 miles, 70 cents; also showed the rates on lumber logs and headings rough and dressed lumber and other lumber in the mineral division from Truss-

ville to Attalla, together with the rate on the excess in cents for more than 35 pounds per cord.

P. E. Culli, of Gadsden, for appellant.

Count 1 was defective. 197 Ala. 203, 72 South. 494. The rate was preferential, and made under Acts 1907, p. 40, § 14½. The statute of limitation of three years applies. 1 Ala. 62; 18 Ala. 359; 68 Ala. 149; 72 Ala. 254, 47 Am. Rep. 405; 9 Ala. App. 269, 63 South. 34; 16 Ala. App. 434, 78 South. 464; 152 Pa. 65, 25 Atl. 310; 12 Ala. App. 576, 68 South. 526.

Dortch, Martin & Allen, of Gadsden, for appellee.

Appellant's contentions in the first place are concluded by the following authorities: 196 Ala. 280, 72 South. 120, L. R. A. 1916F, 120; 16 Ala. App. 495, 79 South. 400; 78 South. 989. The suit was not barred by the statute of limitations. 1 Ala. 62; 3 Ala. 599; 106 Ala. 381, 17 South. 709; 179 Ala. 525, 60 South. 807; 9 Ala. App. 269, 63 South. 34.

MERRITT, J. The appellee brought suit to recover freight under charges on 19 cars of softwood blocks or stave bolts, shipped over appellee's line of railroad from Trussville to Attalla, Ala. These shipments moved during the years 1913, 1914, and 1915, and were consigned to appellant, who paid the amount of freight thought by both appellant and appellee to be correct; that is, an amount based on the idea that Attalla was 70 miles from Trussville; it afterwards appearing that the distance was 76 miles. Under an agreed statement of facts, which the reporter will set out, the case was tried before the judge in the lower court, judgment being rendered for the appellee.

The pleas were the general issue, payment, and the statute of limitations of three years. Appellant's main contention is that the 19 cars taken together make the claim an open account.

[1] In the case of Sheppard v. Wilkins, 1 Ala. 62, the court defines an open account as follows:

"An open account is one in which some term of the contract is not settled by the parties, whether the account consist of one item or many."

This definition has been uniformly followed by our courts down to the present time, and it is so clear that to attempt to give any other or further definition would but lead to confusion and doubt.

[2] We take it that "some term of the contract is not settled by the parties," as used in this definition, presupposes of course, "some term of the contract" that the parties are capable of dealing with, or of leaving open or unsettled. And herein is the trouble with appellant's contention in this case. The rate in a case of shipment of freight of this kind was fixed by law; it was not a matter of contract between the parties. This much is practically admitted by appellant, who contends that the rate fixed, was 70 cents per cord on softwood blocks or stave bolts. This would be true but for the fact, that the 70 cent fixed rate only applied to distances under 70 miles, whereas there was an equally fixed rate, where the distance was over 70 miles, which afterwards appeared to be in this case the correct distance. It cannot be seriously contended that the matter of distance was left open to be afterwards determined. The rate was fixed on whatever the distance along appellee's lines was, and no matter if it was thought at the time of the payment of freight that it was under 70 miles, and settlement made accordingly, this in no wise changed the fact of the actual distance, even though, as stated above, it might afterwards turn out to be otherwise. This proposition is clearly dealt with in the case of Union Naval Stores Co. v. Patterson, 179 Ala. 525, 60 South. 807, where our Supreme Court held that a contract for the sale of a quantity of rosin, and turpentine at a price to be fixed by the market quotations on the days of delivery is not an open account because nothing was left to be settled by the parties. The instant case is, to our minds, even stronger, because at the time of the delivery of the softwood to appellee for shipment there was a fixed rate on the same to Attalla, no question was asked about it, nothing was left open, nor indeed could be as to that, the same being fixed by law. Both parties settled on what was supposed to be the fixed rate, and the fact that it afterwards appeared that they made a mistake as applying the facts in the case would in no wise change the law, that is in the instant case the rate whatever it in fact was, certainly not to the extent of permitting the appellant when sued to say our mistake as to the distance, our mistake as to the law, if you please, left the matter open, unsettled, and by virtue of this, the appellee having waited for more than three years, is barred and precluded from maintaining this action.

No mistake of the law, that is of the law made, fixed rate, can be said to be that uncertainty, which would leave any settlement made thereby in a state of such unliquidation as would enable one of the parties when sued to claim such mistake as such an element of uncertainty, to the end that the statute of limitation of three years could be successfully pleaded as a bar to such suit.

The facts in this case cannot differentiate it from the case of Northern Ala. Ry. Co. v. Wilson Mercantile Co., 9 Ala. App. 269, 63 South. 34, in which this court speaking through Judge Pelham expressly decides that a claim for freight is not an open account, and is not barred by the statute of limitations of three years. This language is used in that case:

"In this case the demand was based on a contract of shipment, and the amount payable as freight was a definite, certain, *fixed* [underscoring ours] sum—*fixed* by law. The qualifications which the law imposed determined the respective liabilities of the parties, and, the demand being ascertained and fixed by law, it is not an open account against which the statute of limitation of three years will run as a bar."

The reasoning in the case above cannot be brushed aside by saying that in the instant case more than one car is involved. Each car was shipped at a separate and distinct time, and the rate was as definitely fixed on 19 cars as on one. The plaintiff could have brought suit on each separate car, and would then have had 19 separate suits instead of one. Under the law it had the right to join these separate and distinct causes of action in one suit. In seeking to eliminate the evils, incident to permitting the carrier and shipper to make rates, or fix the classification, the law itself fixes these rates and classifications, and even though parties may have honestly thought that the shipment was under such a rate or came within such a classification, there was in fact but one rate, but one classification as a matter of law, and the fact that plaintiff had more than one rate, which it thought applied, in no sense changed the rate, or introduced an element making the account unsettled.

In the case of A. J. Poor v. Chicago, Burlington & Quincy R. R. Co., 72 Interst. Com. R. 418, the Interstate Commerce Commission, through Harlan, Commissioner, said:

"Stability and equality of rates are more important to commercial interest than reduced rates. * * * While shippers rely largely upon rates quoted by freight agents and billing clerks, the law charges them with knowledge of the lawful rates, and they will not be heard before this commission to claim the benefit of a lower than the lawful rate, on the ground that some railroad clerk has made a mistake in quoting a lower rate for a particular shipment."

In the case of Emerson v. Central of Ga. Ry. Co., 196 Ala. 280, 72 South. 120, L. R. A. 1916F, 120, Justice Thomas, speaking for the court, says that "mistake, inadvertence, honest agreement, and good faith are alike unavailable," and furnish no defense to an action for the lawful rate, both shipper and carrier being bound by the rate on file with the Railway Commission, and they are powerless to contract with reference to any other rate. See, also, the following cases: Oden-Elliott Lumber Co. v. L. & N. R. R. Co., 16 Ala. App. 495, 79 South. 400, 401; L. & N. R. R. v. McMullen, 5 Ala. App. 663, 59 South. 683; Hurt v. A., B. & A. R. Co., 17 Ala. App. 241, 84 South. 631.

We are not unmindful that it is awfully hard for the appellant to have to pay the amount of this judgment, paying freight to the amount of double and treble the market value of the articles shipped at the time of shipment, and if we were to decide the case on sympathy it would not take us two minutes to write a judgment for appellant, but it is our duty to declare the law, and as we see it there is no escape from the conclusion reached by the trial judge. It may be stated, however, that the appellant had the right to make shipment over the Alabama Great Southern Railroad to Attalla, which was a competing line and a distance of 41 miles from Trussville, over which line there was a rate in keeping with the value of the commodity shipped, and while appellant as well as appellee, appear to have made an honest mistake as to the rate, yet appellant had its choice of routes, and there is nothing left for this court but to affirm the judgment of the trial court.

Affirmed.