HOOPER, Chief Justice
(dissenting).
In McConico v. Corley, Moncus & Bynum, P.C., 567 So.2d 863 (Ala.1990), this Court stated the elements of fraud: “1) a false representation; 2) regarding a material existing fact; 3) which the plaintiff relies upon; and 4) [damage] proximately caused by the misrepresentation.” 567 So.2d at 864. Under the facts of this case, Janet Watson could not be found to have justifiably relied on statements by the manager or directors of Owens Cross Roads Water Authority indicating that water would be available for the subdivision Watson was developing. This Court wrote in Vance v. Huff, 568 So.2d 745 (Ala.1990):
“This Court has repeatedly held that the right to rely on the representations of others comes with a concomitant duty on the part of plaintiffs to exercise some measure of precaution to safeguard their interests. If the circumstances surrounding the alleged misrepresentations are such that a reasonably prudent person exercising ordinary care would have discovered the facts, the plaintiff is not entitled to recover.”
568 So.2d at 751 (citations omitted).
It is undisputed that Janet Watson and Watson Development Corporation’s agent knew that a subdivision developer is required to present to the water authority’s governing body a plan for supplying water to the subdivision before the authority’s board can decide whether to supply water to the subdivision. Watson Development’s agent Phillip Wilbanks admitted that before Ms. Watson, acting through Watson Development, purchased the property for the subdivision, OCRWA’s manager told Wilbanks that he would be required to obtain the approval of OCRWA’s board for any plan to supply water. “An agent’s knowledge concerning the subject matter of the agency is imputed to the principal.” Wilma Corp. v. Fleming Foods of Alabama, 613 So.2d 359, 366 (Ala.1993). Thus, Wilbanks’s knowledge is imputed to Janet Watson and Watson Development.
The State Health Department’s regulations regarding supplying water to subdivisions require the developer, not the water system, to determine whether a water system can provide water for a subdivision. Regulation § 420-3-l-.42(2) provides that “the developer shall employ an engineer to determine the proper and adequate method of water supply ... for the proposed subdivision.” The regulation also provides that, where a public water system is to be utilized, the developer must submit to the Health Department a letter from the public water system or its consulting engineer. The letter must provide the system’s approval for utilizing the public water system, approval of the plan’s water distribution system, proof that a satisfactory amount of water pressure will be available to the subdivision, and it must assure future acceptance of the subdivision when completed. Regulation 420-3-1-.42(2)(b) and (c). Phillip Wilbanks admitted that he was aware of the regulatory requirements and knew that they applied to the planned subdivision.
The plaintiffs claim that the regulations do not apply in this case because the regulations apply to the development of subdivisions, and Watson Development, they say, had not begun developing a subdivision at the time its agents had their discussions with Bobby Salmon. However, the basis of the plaintiffs’ fraud claims is that the defendants misrepresented that water would be available to service the subdivision and concealed facts that would have allowed the plaintiffs to discover that the Water Authority would be unable to supply water. The plaintiffs knew or should have known that, under the regulations, a subdivision could not be developed until Watson Development employed an engineer to make this determination. Also, the plaintiffs knew or should have known that they would then have to obtain the OCRWA board’s approval of the water distribution plan and *1068 •its commitment that OCRWA would accept the subdivision upon its completion.
The plaintiffs could not have justifiably relied upon mere oral representations by an OCRWA employee that the authority could and would supply the proposed subdivision with water. Janet Watson and Wilbanks were experienced in developing real property and in dealing with water systems; it is undisputed that Wilbanks had actual knowledge that OCRWA’s board, and not Bobby Salmon, would be required to decide whether water could and would be supplied. Ray Vandiver, another agent of Janet Watson and Watson Development, was told that OCRWA’s supplying water was contingent on board approval and on engineering studies. Wilbanks undisputedly knew, and Janet Watson knew or should have known, that applicable regulations required Watson Development to employ its own engineer to determine whether water would be available for the proposed subdivision. Both also should have known that the regulations required the developer to present to the board a proposed water distribution plan as a prerequisite to obtaining the board’s commitment to provide water to the subdivision. The plaintiffs failed to exercise ordinary care to safeguard their own interests. The defendants are not to blame for the plaintiffs’ problems. I would affirm the defendants’ summary judgment.